UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHRISTINE ST. HUBERT** | **CIVIL ACTION** |
| **VERSUS** | **NO: 25-1277** |
| **OPS FAMILY CARE, LLC** | **SECTION: "H"** |

### ORDER AND REASONS

Before the Court is Plaintiff Christine St. Hubert's Motion for Default Judgment against Defendant OPS Family Care, LLC (Doc. 11). For the following reasons, the Motion is **GRANTED**.

### BACKGROUND

Plaintiff Christine St. Hubert alleges that she was employed as a part-time clinical program director at Defendant OPS Family Care, LLC from September 3, 2024 to January 27, 2025. She alleges that she entered into an employment contract with Defendant for a monthly salary of $2,300 for 80 hours of work. She was required to submit monthly invoices to Defendant outlining her work deliverables, and Defendant agreed to pay the invoices on the 15th of each month. Plaintiff alleges that, despite multiple demands, Defendant has failed to pay the invoices for the months of November 2024, December 2024, and January 2025. Plaintiff resigned from her position on January 27, 2025. Plaintiff's final demand for payment prior to filing suit was made on May 30, 2025. Plaintiff brings claims for violation of the Fair Labor Standards Act ("FLSA"), the Louisiana Wage Payment Act ("LWPA"), and state law breach of contract.

1

Defendant was served on August 15, 2025 and has failed to make an appearance in this matter. The clerk entered default on September 9, 2025, and Plaintiff now moves for the entry of a default judgment on her claims against Defendant.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 55(b) authorizes the clerk to make an entry of default against defendants who fail to answer or otherwise defend a plaintiff's complaint within the required time period.[1] An entry of default results in a plaintiff's well-pleaded factual allegations being deemed admitted.[2] Nevertheless, a defendant against whom a default has been entered "is not held to admit facts that are not well-pleaded or to admit conclusions of law."[3]

Following the entry of default, a plaintiff may move for default judgment against the defendant in default.[4] "[A] defendant's default does not in itself warrant the court in entering a default judgment" as "[t]here must be a sufficient basis in the pleadings for the judgment entered."[5] Although judgments by default are "generally disfavored,"[6] the decision to enter default judgment is within the sound discretion of the trial court.[7]

The Court is entitled to consider several factors when determining whether to enter a default judgment, including:

> whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are

---

[1] FED. R. CIV. P. 55.
[2] Meyer v. Bayles, 559 F. App'x 312, 313 (5th Cir. 2014) (citing Nishimatsu Const. Co. v. Houston Nat. Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).
[3] *Nishimatsu*, 515 F.2d at 1206.
[4] FED. R. CIV. P. 55(b)(2).
[5] *Nishimatsu*, 515 F.2d at 1206.
[6] Lacy v. Sitel Corp., 227 F.3d 290, 292 (5th Cir. 2000).
[7] Lewis v. Lynn, 236 F.3d 766, 767 (5th Cir. 2001) (citing Mason v. Lister, 562 F.2d 343, 345 (5th Cir. 1977)).

clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion.[8]

The Fifth Circuit has acknowledged that an evidentiary hearing can be held when the damages claimed are unliquidated.[9] However, an evidentiary hearing is unnecessary when the amount of damages claimed is a liquidated sum or an amount "capable of mathematical calculation."[10]

## LAW AND ANALYSIS

In order to enter a default judgment, the Court must first examine its jurisdiction over the subject matter and the parties before proceeding to the merits of Plaintiff's Motion for Default Judgment.[11]

### A. Subject Matter Jurisdiction

Subject matter jurisdiction in this case is premised solely on the Fair Labor Standards Act ("FLSA"). Plaintiff alleges that she was a covered employee, and that Defendant, a covered employer, misclassified her as an exempt independent contractor and deprived her of minimum wage for the 80 hours she worked in each of the months of November 2024, December 2024, and January 2025. Accordingly, this Court has federal question jurisdiction over Plaintiff's FLSA claim and supplemental jurisdiction over her state law claims arising out of the same facts.[12]

### B. Personal Jurisdiction

---

[8] Lindsey v. Prive Corp., 161 F.3d 886, 893 (5th Cir. 1998).
[9] James v. Frame, 6 F.3d 307, 310 (5th Cir. 1993).
[10] *Id.*
[11] Sys. Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY, 242 F.3d 322, 324 (5th Cir. 2001).
[12] 28 U.S.C. §§ 1331, 1367(a).

3

Next, the Court must consider personal jurisdiction over Defendant. Plaintiff's Complaint contends that Defendant is a Louisiana company operating out of Gretna, Louisiana and is therefore domiciled in Louisiana. Accordingly, the Court has personal jurisdiction over Defendant in its home state.

**C. Venue**

The Court must also consider whether the action has been brought in an appropriate venue. "A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject to the action is situated."[13] Plaintiff worked for Defendant in Gretna, Louisiana, which is located in this judicial district. Therefore, venue is proper in this district.

**D. Plaintiff's Claims**

Plaintiff brings claims for violation of the FLSA, the LWPA, and state law breach of contract. The Court will consider each in turn.

*1. FLSA*

Plaintiff claims that Defendant has violated the FLSA by misclassifying her as an independent contractor, rather than an employee, and failing to pay her minimum wage as required under the FLSA.

> In order to establish a prima facie case for a FLSA violation, Plaintiff must prove: (1) she had an employer-employee relationship with Defendant; (2) Defendant [was] engaged in activities that are subject to the FLSA; (3) Defendant[] violated wage requirements covered by the FLSA; and (4) actual compensation damages are due to Plaintiff.[14]

---

[13] 28 U.S.C. § 1391(B)(2).
[14] Almanza v. Taqueria El Alteno No. 1, Inc., No. CV H-09-655, 2010 WL 11678958, at *3 (S.D. Tex. July 29, 2010).

4

Here, the threshold question is whether Plaintiff is an employee under the FLSA or an independent contractor. "The definition of employee under the FLSA is particularly broad."[15] As the United States Supreme Court has noted, the FLSA "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles."[16] The Fifth Circuit has advised that to determine if a worker qualifies as an employee, the court should "focus on whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself."[17]

In considering whether the worker is "economically dependent" such that they may be considered an independent contractor, the Fifth Circuit has espoused the following, non-exhaustive factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.[18] "No single factor is determinative."[19]

Here, Plaintiff has alleged that Defendant set the rate of pay, assigned her work, required her to work at the main office, and provided job training and on-boarding to teach her how to do the job. Defendant provided the office and materials utilized, including printing services, computer software, and fax services. Critically, Plaintiff was prohibited from seeking any other business opportunity related to her work with Defendant or from working directly or

---

[15] Hopkins v. Cornerstone Am., 545 F.3d 338, 341 (5th Cir. 2008) (citing Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992)).
[16] *Id.* (quoting *Nationwide Mut. Ins. Co.*, 503 U.S. at 326).
[17] *Id.* (citing Herman v. Express Sixty–Minutes Delivery Serv., Inc., 161 F.3d 299, 303 (5th Cir. 1998)).
[18] *Id.*
[19] *Id.* (citing Brock v. Mr. W Fireworks, Inc., 814 F.2d 1042, 1043–44 (5th Cir. 1987)).

indirectly with other businesses that Defendant determined conflicted with its interest. Plaintiff also had no ability to increase or decrease her profits because she was provided a base monthly wage. The contract did not have a termination date, and Plaintiff represents that had Defendant continued paying her, the employment relationship would have continued. Based on these facts, the Court finds that Plaintiff was economically dependent on Defendant and was an employee, not an independent contractor. Accordingly, Plaintiff and Defendant had an employee-employer relationship.

Having satisfied the first element of a minimum wage violation claim, the next two elements are easily satisfied. To establish the second prong—that Defendant was engaged in activities that are subject to the FLSA—"an employee must demonstrate that: (1) she personally engaged in commerce or the production of goods for commerce ('individual coverage') or (2) she worked for an enterprise engaged in such activity ('enterprise coverage')."[20] Plaintiff has shown that she was engaged in commerce by handling documentation of patients, appointments, and data entry using computer software and other technology.[21]

Next, the FLSA requires employers to pay their nonexempt employees a statutory minimum hourly wage.[22] Plaintiff has shown that she was not paid any amount for the hours she worked in November 2024, December 2024, and

---

[20] Mata v. Caring For You Home Health, Inc., 94 F. Supp. 3d 867, 872 (S.D. Tex. 2015).

[21] *See* Blundell v. Lassiter, No. 3:17-CV-1990-L-BN, 2018 WL 6738046, at *10 (N.D. Tex. May 21, 2018) ("Here, taking the allegations in the Complaint as a whole, the Court can infer at a minimum that Bethany employed, among other types of staff, office staff members who handled documentation of home healthcare referral patients, scheduled home healthcare appointments, and performed data entry tasks, and that these office staff members used computers, computer software, and phones, as 'tools or other articles necessary for doing or making something' for the commercial purposes of Bethany's home health business operations. And 'Plaintiffs' allegation that these materials had previously been moved in or produced for commerce suffices at this stage of the litigation to complete the statutory fit and plausibly bring Defendants within FLSA coverage under the handling clause.'").

[22] 29 U.S.C. § 206.

January 2025. Accordingly, Defendant violated wage requirements covered by the FLSA.

Finally, the Court considers the damages due to Plaintiff. Under the FLSA, any employer who violates the FLSA minimum wage statute is "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."[23] Plaintiff has shown that she has not been paid the federal minimum wage of $7.25 for 230 hours that she worked.[24] Accordingly, she is owed $1,667.50 in unpaid minimum wages and is entitled to an equal amount in liquidated damages.

  2. *LWPA*

Plaintiff also brings a claim for unpaid wages under the LWPA. Pursuant to the LWPA,

> Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.[25]

"To state a claim for unpaid wages under the LWPA, an employee must allege (1) that the defendant was his employer; (2) that the employee/employer relationship ceased to exist; (3) that at the time the employee/employer relationship ended he was owed wages; and (4) that the defendant failed to

---

[23] *Id.* § 216(b).
[24] Plaintiff contends that she worked 78 hours in November, 80 hours in December, and 72 hours in January. Doc. 1; 29 U.S.C. § 206.
[25] LA. REV. STAT. § 23:631.

7

submit the owed wages within the fifteen days required under the statute."[26] As discussed above, Plaintiff has established each of these points.

That said, Plaintiff is entitled to the recovery of unpaid wages under the LWPA. She has established that she is owed $6,670.90 in unpaid wages.[27] However, she "cannot recover unpaid federal minimum wages under both federal and state law," but can only recover "unpaid wages in excess of the federal minimum wages" under the LWPA.[28] Accordingly, subtracting the $1,667.50 in unpaid minimum wages, Plaintiff is entitled to $5,003.40 in unpaid wages under the LWPA.

In addition to unpaid wages, the LWPA allows for the recovery of penalties:

> A. Except as provided for in Subsection B of this Section, any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.
> B. When the court finds that an employee's dispute over the amount of wages due was in good faith, but the employer is subsequently found by the court to owe the amount in dispute, the employer shall be liable only for the amount of wages in dispute plus judicial interest incurred from the date that the suit is filed. If the court determines that the employer's failure or refusal to pay the amount of wages owed was not in good faith, then the employer shall be subject to the penalty provided for in Subsection A of this Section.[29]

---

[26] Carver v. Cap. Area Transit Sys., No. CV 21-281-RLB, 2022 WL 1123786, at *5 (M.D. La. Apr. 14, 2022) (citing Dillon v. Toys R Us-Delaware Corp., No. 2016-0983, 2017 WL 2351490, at *2 (La. Ct. App. 4th Cir. May 31, 2017)).

[27] Plaintiff arrived at this number based on being owed $2,300 in November and December 2024 and $2,070.90 in January 2025.

[28] *Id.*

[29] LA. REV. STAT. § 23:632.

Accordingly, Plaintiff is entitled to $6,900 in penalties under the LWPA.[30] Because Defendant has not responded to this action, there is no evidence that its failure to pay was in good faith.

Having found Defendant liable under the FLSA and LWPA, this Court need not consider Plaintiff's breach of contract claim. "Any awardable damages for breach of contract have been recovered in light of the award of unpaid wages under the FLSA and LWPA."[31]

### 3. Attorney's Fees and Costs

Both the FLSA and the LWPA provide for a mandatory award of reasonable attorney's fees and costs when an employee is forced to file suit to recover unpaid wages.[32] The Fifth Circuit applies the "lodestar" method to calculate the reasonableness of attorney's fees under the FLSA.[33] "The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work."[34] An hourly rate is considered prima facie appropriate when an attorney has provided his hourly rate, the rate is within the range of prevailing market rates, and the rate is not contested.[35]

Here, Plaintiff's counsel requests $7,532.05 in attorney's fees and $474.96 in costs. Plaintiff's counsel represents that her firm billed 27.88 hours on this matter. Plaintiff's counsel charges an hourly rate of $300, her paralegals charge $75, and her staff charge $20. These amounts are not contested and are within the range of prevailing market rates. Accordingly, Plaintiff is entitled to recover attorney's fees and costs in the amounts sought.

---

[30] This amount represents 90 days of her $2,300 monthly salary.
[31] *Carver*, 2022 WL 1123786, at *2 n.2.
[32] LA. REV. STAT. § 23:632; 29 U.S.C. § 216(b).
[33] Black v. SettlePou, P.C., 732 F.3d 492, 502 (5th Cir. 2013).
[34] *Id.*
[35] Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 328 (5th Cir. 1995).

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion is **GRANTED**. Plaintiff is entitled to the entry of judgment against Defendant in the total amount of $23,245.41 on her FLSA claim and LWPA claim. Plaintiff's award of damages includes: $1,667.50 in unpaid wages under the FLSA; $1,667.50 in liquidated damages under the FLSA; $5,003.40 in unpaid wages under the LWPA; $6,900 in penalties under the LWPA; $7,532.05 in attorney's fees; and $474.96 in costs.

New Orleans, Louisiana this 9th day of January, 2026.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**